In the Matter of the CITY OF BUFFALO, Appellant, for Leave to Inspect the December 1972 Grand Jury Minutes of the County of Erie. EDWARD C. COSGROVE, as District Attorney of County of Erie, Respondent.

Fourth Department, April 7, 1977

*Leslie G. Foschio, Corporation Counsel (Harvey Mandelkern* of counsel), for appellant.

*Edward C. Cosgrove, District Attorney, pro se (Judith Blake Manzella* of counsel), for respondent.

GOLDMAN, J. Petitioner, the City of Buffalo, appeals from County Court's denial of its application to inspect the minutes of the December, 1972 Erie County Grand Jury. The inspection motion was opposed by the District Attorney of Erie County.

The present dispute had its genesis when the Grand Jury,

following an extensive investigation of a so-called "no-show" job scandal involving Buffalo municipal employees, successfully petitioned the Erie County Court for an order permitting disclosure to the Mayor of Buffalo of the names of 41 Grand Jury witnesses who had, in the Grand Jury's opinion, been paid by the city for work which was never performed. According to the city's affidavit in support of the instant inspection application, the list of names was disclosed to the Mayor in December, 1974, by which time the city had already commenced actions against several individuals named in the list, as well as an action against the Fidelity & Deposit Company of Maryland to recover on a fidelity bond issued by that company to the city. The city's affidavit further alleges: that although the city's Assistant Corporation Counsel knew of admissions made by some persons named in the list, he was "unaware of any wrongdoing of the majority of persons * * * named [in the list] even after numerous inquiries into this matter with personnel from the District Attorney's office and the Department of Street Sanitation of the City of Buffalo"; that in May, 1975 he obtained orders of Erie Special Term permitting the taking of depositions of 22 individuals named in the list prior to bringing actions against them; that some of the parties submitted to depositions and others appealed; that the submitting parties "for the most part, admitted no wrongdoing with the exception of an occasional day's absence, which, at the most, would be interpreted as *de minimis*"; and that this court reversed Special Term's orders *(Matter of City of Buffalo [Orlando]*, 52 AD2d 1061), ruling in effect that the city must first commence its actions and then proceed by the normal postcomplaint discovery methods, but could not have preaction discovery for the purpose of enabling it to state the amount of its damages. The affidavit further states that the city and the bonding company were close to a settlement which, however, was "only based on the admissions which the City presently has in its possession". The affidavit concludes that inspection of the Grand Jury testimony of some 30 witnesses named in the list is important for purposes of determining whether the sums wrongfully received were substantial, to aid not only in settling with the bonding company but also in deciding whether to bring civil actions against persons named in the list.

Six of the witnesses whose Grand Jury testimony is sought have filed an *amicus curiae* brief in which they argue that the

city should be enjoined from any use of the Grand Jury minutes because County Court's order permitting the initial disclosure of the list of names to the Mayor was unlawful. However, the *amici* are alone in challenging the legality of that order (which was never appealed) and in seeking injunctive relief. Because the *amici* have no standing to present new issues in the case *(Matter of Lezette v Board of Educ. Hudson City School Dist.,* 35 NY2d 272, 282), we do not consider their argument on this point.

As all parties agree, the determination of a motion for disclosure of Grand Jury minutes rests in the sound discretion of the court *(People v Di Napoli,* 27 NY2d 229, 234-235; *Matter of Scotti,* 53 AD2d 282, 286-287; see CPL 190.25, subd 4; Judiciary Law, § 325) and should be based upon a balancing of "the public interest in disclosure against that in secrecy" *(People v Di Napoli, supra,* p 234). As the reasons "most frequently mentioned" in support of Grand Jury secrecy, the *Di Napoli* court recited these (p 235): "(1) prevention of flight by a defendant who is about to be indicted; (2) protection of the grand jurors from interference from those under investigation; (3) prevention of subornation of perjury and tampering with prospective witnesses at the trial to be held as a result of any indictment the Grand Jury returns; (4) protection of an innocent accused from unfounded accusations if in fact no indictment is returned; and (5) assurance to prospective witnesses that their testimony will be kept secret so that they will be willing to testify freely." (See, also, *United States v Procter & Gamble Co.,* 356 US 677, 681, n6, quoting *United States v Rose,* 215 F2d 617, 628-629.) Disclosure of Grand Jury minutes is not limited to public bodies concerned with the administration of the criminal law *(People v Di Napoli, supra,* p 236), and has frequently been granted to other public officers and agencies which require the minutes in furtherance of some official duty to protect an important public interest (see, e.g., *People v Di Napoli, supra; Matter of Scotti,* 53 AD2d 282, *supra; People v Werfel,* 82 Misc 2d 1029; *Matter of Temporary State Comm. of Investigation,* 47 Misc 2d 11; *People v Behan,* 37 Misc 2d 911; *Matter of Scro,* 200 Misc 688; *People ex rel. Sawpit Gymnasium,* 60 NYS2d 593; *Matter of Crain,* 139 Misc 799; cf., *People ex rel. Hirschberg v Board of Supervisors,* 251 NY 156, revg 215 App Div 776). Moreover, in *Matter of Quinn [Guion]* (267 App Div 913, affd without opn 293 NY 787), an unofficial group of town residents which had instituted pro-

ceedings to remove the town's receiver of taxes was allowed to inspect his testimony before a grand Jury which had reported that he was negligent in failing to learn that his predecessor (who was indicted) had misappropriated funds.

At the opposite pole are cases in which purely private civil litigants have sought inspection of Grand Jury minutes for the purpose of preparing suits. Although courts have recognized a limited right in civil litigants to use a trial witness' Grand Jury testimony to impeach, to refresh recollection or to lead a hostile witness *(Herring v City of Syracuse,* 81 Misc 2d 1060, 1062; *Foley v City of New York,* 75 Misc 2d 664; *Marinelli v State of New York,* 71 Misc 2d 62), wholesale disclosure of Grand Jury testimony for purposes of trial preparation has been almost uniformly denied to private litigants *(Albert v Zahner's Sales Co.,* 51 AD2d 541, affg 81 Misc 2d 103; *Vartanesian v Purcell,* 57 Misc 2d 217; *Kruger v County of Nassau,* 53 Misc 2d 166; contra, *People v Carignan,* 76 Misc 2d 515). In the last-cited case, the court was moved by the argument that the public policy of encouraging crime victims to complain would be advanced by allowing inspection of Grand Jury minutes to a complainant to aid in preparation of her defense in a false arrest action which was brought against her by the accused.

Applying the principles gleaned from the foregoing authorities, we conclude that the denial of inspection of the Grand Jury minutes was proper. It is true that the city does stand in a better position than a purely private civil litigant, because the money it seeks to recoup is public money, and recoupment by civil suit might have a deterrent effect on dishonest employees. Still, the public interest in recouping an undetermined amount of money seems far less compelling than the public interest at stake in *Di Napoli (supra)* where avoidance of future episodes of public contract bid rigging and potentially huge savings to utility rate payers were in the offing (see 27 NY2d, at p 235), or in *Quinn (supra)* where the disclosure was sought to aid in the ouster of an unfit public official who might have posed a continuing threat to the town's fiscal integrity. Also significant is that the District Attorneys in *Di Napoli* and *Quinn* did not resist disclosure, whereas here the District Attorney is actively opposed. The December, 1972 Grand Jury has long since concluded its work and it is not claimed that any pending investigation would be jeopardized by disclosure, but we think it plain that where, as

here, many witnesses have testified to a scheme of fraud in municipal government and have made admissions against their own pecuniary interests, a disclosure of their testimony which would expose them to civil liability would have "a chilling effect on the ability of future grand juries to obtain witnesses" in similar investigations *(People v Di Napoli, supra,* p 236). Finally, the city's affidavit is deficient in several respects. It fails, for example, to name with specificity the individuals against whom there is no evidence of wrongdoing, or those who admitted only occasional absences when questioned. The affidavit also fails to allege, much less demonstrate, that sources other than the Grand Jury minutes are inadequate to provide the information which the city seeks. We therefore hold that upon the facts disclosed in this record County Court did not abuse its discretion in denying disclosure of the Grand Jury minutes and the order should be affirmed.

CARDAMONE, J. P., SIMONS and WITMER, JJ., concur.

Order unanimously affirmed, without costs.