■ In the Matter of DEPUTY ATTORNEY-GENERAL FOR MEDICAID FRAUD CONTROL. ANTON NOTEY, Appellant; UNITED STATES DEPARTMENT OF HEALTH, EDUCATION AND WELFARE et al., Respondents.—In a proceeding to vacate an order authorizing the disclosure of Grand Jury testimony, the petitioner Anton Notey appeals from an order of the County Court, Suffolk County (Rohl, J.), dated January 14, 1985, which denied his motion to vacate an ex parte order of the same court (Tanenbaum, J.), entered January 22, 1980, which authorized disclosure.

Order affirmed, with costs.

The petitioner Anton Notey, a physician, was a controlling partner of Smithtown General Hospital. In and about 1978 Notey was charged in Suffolk County indictments with various crimes based upon the larceny of large sums of money from the State of New York, through the Medicaid program and from insurance carriers, by submitting false claims for reimbursement of inflated or fictitious expenses. In short, Notey was accused of committing Medicaid fraud. Notey subsequently pleaded guilty to two counts of grand larceny in the second degree in satisfaction of the aforesaid Suffolk County indictments (see, People v Notey, 72 AD2d 279, 280). One of the conditions of the plea arrangement was that Notey make restitution to the State in the amount of $1,250,000.

As a result of the Notey plea agreement, and the restitution made to the State of New York, the United States Department of Health, Education and Welfare (hereinafter HEW) sought to recoup from Smithtown General Hospital (hereinafter Smithtown) that portion of Smithtown's Medicaid reimbursements which had been inflated by Notey's activities. Through its "[f]iscal [i]ntermediary", Travelers Insurance Company (hereinafter Travelers), HEW sought to audit Smithtown. Since it was determined by Travelers that Smithtown had been overpaid by approximately $230,000, Travelers began to withhold sums from payments currently due Smithtown so as to recoup the loss. Smithtown, however, disputed the adjustments and, in 1979, appealed to the Federal Provider Reimbursement Review Board, the appeal agency within the Medicare Bureau. So as to meet Smithtown's challenge to the accuracy of the adjustments, HEW's Program Operations Director of the Medicare Bureau requested that the office of the Deputy Attorney-General for Medicaid Fraud procure the Grand Jury materials relevant to Notey's activities.

Apparently, the alleged crimes were not wholly ascertain-

able from the hospital's books and records, and required some 18 months of investigative work and some six months of Grand Jury presentment. Pursuant to the request of HEW, the Deputy Attorney-General's office, on January 22, 1980, obtained, by ex parte application, an order authorizing the release of certain Grand Jury materials to HEW. Counsel for Smithtown was aware almost immediately thereafter that the materials had been released. Indeed, from February of 1980 until January of 1984, there ensued numerous communications between Smithtown and Travelers wherein the hospital requested, but Travelers refused to provide the hospital with a copy of the Grand Jury materials.

On January 4, 1984, a hearing was held before the Federal Provider Reimbursement Review Board. Travelers did not attempt to utilize the minutes but instead apparently relied only upon the allegation contained in the indictment to establish the $230,000 adjustment. On June 21, 1984, the Provider Reimbursement Review Board held that Travelers had only proven overpayments in the amount of $30,000 and directed Travelers to pay Smithtown approximately $200,000. Travelers appealed this decision to the Health Care Financing Administration, which on July 31, 1984, referred the matter back to the Provider Reimbursement Review Board for further proceedings and for the "purpose of [its] obtaining any grand jury materials relevant to this case and held by the intermediary [Travelers]". On August 29, 1984, the Provider Reimbursement Review Board ordered Travelers "to produce the grand jury information relevant to the issues in this case simultaneously to the Board and to the Provider's counsel by October 30, 1984 unless the Intermediary produces an opinion from the Department's OGC [Office of General Counsel] or a New York Court orders otherwise".

Shortly thereafter, Notey commenced an action by order to show cause seeking to enjoin Travelers "from disclosing certain Grand Jury materials in its possession in a proceeding currently pending before the Provider Reimbursement Review Board". By notice of removal dated October 11, 1984, the action was removed to the United States District Court for the Eastern District of New York where it is now pending. The Federal action was stayed so as to permit Notey to make the instant application to vacate the 1980 release order. By order to show cause dated October 25, 1984, Notey commenced the instant proceeding in the County Court, Suffolk County, to vacate and set aside the January 22, 1980, ex parte release

order. The County Court, however, denied the motion to vacate and Notey now appeals.

On appeal, Notey raises two principal bases in support of reversal. It is contended that the Deputy Attorney-General improperly proceeded by ex parte application since Notey was entitled to notice of any attempt to procure the Grand Jury materials. Secondly, Notey argues that the documents submitted in support of the ex parte application were insufficient to overcome the presumption of secrecy applicable to Grand Jury proceedings.

The first issue raised by Notey concerns the question of whether he was entitled to notice that an attempt to secure the Grand Jury minutes was being made. Citing the traditional hostility of courts to ex parte applications, Notey contends that the disclosure order must be vacated because "[h]is right" to the secrecy of Grand Jury proceedings was protected by statute, and as a target of the investigation, he was entitled to notice of the application. Initially, we note that Notey's position as a target of a Grand Jury investigation is hardly analogous to that of a private litigation whose interests have been affected by an opponent's ex parte application. Basic to Notey's theory is the contention that the target of a Grand Jury investigation who has pleaded guilty to charges stemming herefrom, nevertheless maintains an absolute right to intervene when the materials relevant to his defalcations are requested for the benefit of the public interest. We question whether the principles underlying the policy of Grand Jury secrecy require such a result. Clearly, an application seeking the disclosure of Grand Jury materials relative to an individual against whom no indictment has been returned or conviction obtained, impinges upon an identifiable policy concern favoring secrecy, i.e., the need to protect an "innocent accused" from unfounded accusations *(People v Di Napoli,* 27 NY2d 229, 235). However, Notey has already pleaded guilty to, and has been sentenced for, crimes arising out of activities investigated by the Grand Jury. Notey is not an "innocent accused" and, therefore, is not an individual personally aggrieved by the possible disclosure of the materials. Thus, he can hardly contend that his participation in a disclosure proceeding is required in order to permit him to vindicate a legally cognizable interest in the maintenance of secrecy. Furthermore, Notey has not been diligent in seeking the vacatur of the instant order, which was granted some 4½ years prior to the instant proceeding. The record herein suggests that more than a month prior to the issuance of the

release order, counsel for Smithtown, of which Notey was still a copartner, was notified that HEW was attempting to obtain the Grand Jury materials. Further, 10 days after the issuance of the release order, said counsel was informed that the materials had been obtained. Counsel was thus clearly aware that Travelers intended to utilize the materials in establishing its right to recoupment. Nevertheless, during the years between the issuance of the release order and the instant proceeding to vacate it, no attempt was ever made to vacate said order premised upon the ex parte nature of the underlying application or the sufficiency of the documents submitted in support thereof. Moreover, almost immediately after the release of the materials, Smithtown itself began pressing for access thereto. Despite the foregoing activity with respect to the materials, Notey's application to vacate was made only after the favorable decision of the Provider Reimbursement Review Board was reversed so as to permit the production of the materials at a new hearing. Based upon the foregoing and in light of the circumstances of this case, it cannot be said that the failure to apprise Notey of the application for the materials now requires the vacatur of the 1980 release order.

Turning now to the question of whether the County Court abused its discretion in declining to vacate the ex parte order, we note first that it is settled that the rule of secrecy governing Grand Jury proceedings is not absolute and, in the discretion of the court, disclosure may be directed when, after balancing a public interest in disclosure against one favoring secrecy, the former outweighs the latter *(see, Matter of District Attorney of Suffolk County,* 58 NY2d 436, 444; *People v Di Napoli, supra,* at pp 234-235). It has been observed, further, that the decision to disclose "may turn on who the applicant is, what he seeks and the purpose for which he seeks it. Limited publication granted to a public official or agency to further some official duty in protecting the public interest is at one end of the spectrum * * * The other extreme is general discovery sought by a private litigation" *(Jones v State of New York,* 79 AD2d 273, 276). The public interest herein is clear: the disclosure of the Grand Jury materials is necessary to facilitate the recoupment of alleged Medicare reimbursement overpayments attributable to the actions of Notey, who was accused of, and pleaded guilty to, crimes arising out of an alleged Medicare kickback scheme. The record, moreover, discloses that the application made in support of the ex parte order, now belatedly challenged by Notey, sufficiently established that the public interest in

disclosure herein outweighed the policy favoring secrecy of Grand Jury proceedings.

In light of the foregoing, it cannot be said that the County Court abused its discretion in weighing the competing interests present and ruling that the disclosure was warranted. Lazer, J. P., Thompson, Rubin and Kunzeman, JJ., concur.