OPINION OF THE COURT
Lyman H. Smith, J.
Petitioner, the New York State Select Committee on Crime, moves, pursuant to CPL 190.25 (subd 4),[1] for an *94 order “permitting the Special Assistant Attorney Generals of the State of New York to discuss with, or testify, before the Select Committee on Crime concerning matters attending the grand jury proceedings convened pursuant to Executive Orders 42 and 43 of 1976, to the extent of aiding in the investigation of the New York Select Committee on Crime into the charges of selective prosecution by the Special Prosecutor’s Office involved in the aforesaid investigation”.[2]
Simply put, petitioner seeks an order permitting disclosure of certain matters arising from the Extraordinary and Special Grand Jury investigations into political corruption (so-called) in Onondaga County from November 24,1976 to April 8, 1982, the latter date fixing final disposition (by trial or plea) of 29 indictments identifying a total of 50 individually named defendants. By its motion, the Select Committee is endeavoring, inter alia, to ascertain whether the Special Grand Jury investigations, indictments and resultant prosecutions conducted by the Special Prosecutor’s office, were in any way tainted by perceived invidiously selective prosecutions of various public officials, otherwise identified by their particular political affiliations.
Heretofore, former members of the staff of the Onondaga County Special Prosecutor’s office have appeared as witnesses before the petitioning Select Committee and have been asked to discuss with the committee the factual basis for their apparently shared belief that at least some of the Grand Jury investigations and resultant prosecutions carried an appearance of invidious and unfair prosecutorial selectivity.[3] Absent court authorization, these witnesses have refused to particularize their conclusions, or to reveal *95 facts supportive of the same, on the ground that such disclosures would not only violate CPL 190.25 (subd 4) but, similarly, would subject them to criminal liability under section 215.70 of the Penal Law.
It must be observed that the petitioner committee, while emphasizing that it does not seek a plenary review (or disclosure) of the transcripts of Grand Jury testimony and exhibits, nevertheless, does “intend to ask [former members of the Special Prosecutor’s staff] to fill in the redacted words and sentences in a letter sent to Attorney General Abrams on November 28,1980 * * * to ask each witness the content of any conversations with Special Prosecutor Andreoli where the issue of selective prosecution was discussed * * * [and] to ask each witness the content of any conversations with representatives of Attorney General Abrams where the subject matter was selective prosecution by the Special Prosecutor’s office.”[4] Clearly, the scope and dimension of the Select Committee’s prospective inquiry encompasses eventual disclosure of “the nature or substance of * * * grand jury testimony * * * or * * * [a] decision, result or other matter attending a grand jury proceeding.” (CPL 190.25, subd 4.) Thus, because this statute prohibits disclosure of secret Grand Jury proceedings or any “other matter attending a grand jury proceeding”, except “upon written order of the court,” the main question at bar is whether or not, under the circumstances here, the petitioner committee may elicit and receive such disclosures.
As cogently stated in Jones v State of New York (79 AD2d 273, 275-276) by the Honorable Richard D. Simons, then an Associate Justice of the Appellate Division, Fourth Department, “It is settled law that the release of Grand *96 Jury minutes rests in the sound discretion of the court (People v Di Napoli, 27 NY2d 229, 234-235; Matter of Carey [Fischer], 68 AD2d 220, 227 * * * Matter of Corporation Counsel of City of Buffalo [Cosgrove], 61 AD2d 32, 35; Matter of City of Buffalo [Cosgrove], 57 AD2d 47, 49 * * * Matter of Scotti, 53 AD2d 282, 287-289; Judiciary Law, § 325; CPL 190.25, subd 4). When considering such an application, the court must balance the public interest in the secrecy óf Grand Jury proceedings against the same public interest served by disclosure. The decision may turn on who the applicant is, what he seeks and the purpose for which he seeks it.”
Of the five customary reasons logically supporting and measuring the requisite secrecy of Grand Jury proceedings, initially enumerated by Chief Judge Fuld in People v Di Napoli (supra, p 235), there are two especially applicable under the circumstances met here, specifically, (1) protection of an innocent accused from unfounded accusations where in fact no indictment has been returned and (2) assurance to prospective witnesses in future Grand Jury investigations that their testimony will be kept secret so that they will be willing to testify freely.
While the Select Committee urges that it cannot rely solely upon the conclusory statements of former Assistant Special Prosecutors (that the Onondaga investigations and prosecutions were politically biased), nevertheless, it is incumbent upon the petitioner committee to demonstrate a specific sine qua non need for such particularized disclosure, in order to achieve its avowed remedial legislative purposes. Here, the petitioner committee has failed to carry this burden.
Suffice to say, mere claim of superior public interest will not permit such disclosure. (Matter of District Attorney of Suffolk County, 86 AD2d 294; Matter of City of Buffalo [Cosgrove], 57 AD2d 47; Matter of Carey [Fischer], 68 AD2d 220; cf. Jones v State of New York, supra.).
Assuming, arguendo, that the views of former Assistant Attorneys-General as to their perception of “an appearance of impropriety” arising from allegedly selective prosecutorial bias, were valid when made (Nov. 28, 1980), it is a fact *97 that, thereafter, the Grand Jury investigations continued, albeit with a newly appointed Special Prosecutor and supporting staff of assistants. It is equally true that indictments were thereafter filed, and that all investigations and trials continued and were completed on April 8, 1982.
Significantly, counsel to the petitioner committee has commendably conceded that, to date, the committee has not reviewed the indictments on file, the ultimate dispositions made thereof, the specific political affiliations of individual defendants, nor the voluminous minutes of the extended Grand Jury proceedings (heretofore necessarily made public in many cases, in order to assure due process and fair trial of named defendants).
It is respectfully suggested that there are myriad sources of sworn testimony and records, including but not limited to, those relevant to the past and present political history of Onondaga County, the scope and dimension of the Grand Jury investigations and prosecutions triggered by Executive Orders Nos. 42 and 43, together with the personnel and budgetary records of the Special Prosecutor’s office, all of which would provide abundant information sufficient to permit the committee to fashion appropriate legislation. The court is satisfied that such review would point the way to legislation reflective of the law’s highest and best traditions of fairness and of equity without violating or exposing innocent citizens or public officers to harmful calumny and without compromising the ancient and salutary rules of secrecy surrounding the investigations conducted by Grand Juries.
For the foregoing reasons, this court is compelled to conclude that the circumstances here do not justify the requested disclosures. Weighed in the balance, the fundamental obligations of our judicial system to protect the reputations of persons accused of crimes but not indicted or convicted, and, concomitantly, to protect the ultimate fairness and efficiency of our judicial investigative procedures, outweigh the arguable necessity of the disclosures sought in the application at bar.
Accordingly, the application is in all respects denied.

. CPL 190.25 (subd 4): “Grand jury proceedings are secret, and no grand juror, or other person specified in subdivision three *** may, except in the lawful discharge of his duties or upon written order of the court, disclose the nature or substance of any grand jury testimony, or any decision, result or other matter attending a grand jury proceeding.”
Subdivision 3 lists: (a) the district attorney; (b) a clerk; (c) a stenographer; (d) an interpreter; (e) a public servant holding a witness in custody. The statute was amended by chapter 415 of the Laws of 1978 to incorporate those persons proscribed by amended section 215.70 of the Penal Law.
Section 215.70 of the Penal Law: “A person is guilty of unlawful grand jury disclosure when, being a grand juror, a public prosecutor, a grand jury stenographer, a grand jury interpreter, a peace officer guarding a witness in a grand jury proceeding, or a clerk, attendant, warden or other public servant having official duties in or about a grand jury room or proceeding, he intentionally discloses to another the nature or substance of any grand jury testimony, or any decision, result or other matter attending a grand jury *94 proceeding which is required by law to be kept secret, except in the proper discharge of his official duties or upon written order of the court.” The statute was amended by section 4 of chapter 451 of the Laws of 1977 to include within the publication “a public officer or public employee”.

. The Extraordinary and Special Term of Supreme Court (Onondaga County), together with three Extraordinary and Special Grand Juries, thereafter impaneled, were established by Executive Orders Nos. 42 and 43 (9 NYCKR 3.42, 3.43) dated November 24, 1976. (See NY Const, art IV, § 3; art VI, § 27; Executive Law, § 63, subd 2.)

. Charges of “selective prosecution” are not new to this court. Motions to dismiss indictments, on grounds of “invidious prosecutorial selectivity” were heard in at least 12 cases arising from the investigations of the Onondaga County Special Grand Juries. E.g., see motions to dismiss Indictment No. S/1/1979 (People v Auer, Mulroy & Moreland) *95 and the memorandum decision filed and dated July 31, 1980. In this and all other instances the motions were denied and, of those appealed, on such grounds, none were overturned.

. On November 23, 1982, the committee’s general counsel directed a letter to the court in which the above-quoted intentions of the committee appear. This letter has been made a part of the record of these proceedings. The letter directed to Attorney-General Abrams over the signature of six former members of the Special Prosecutor’s staff first appeared in redacted form as Exhibit No. 5 in the committee’s stenographic record of hearings held June 28, 1982. The committee’s record has also been made a part of the record of these proceedings.